U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG - 3 2005

ROBERT H. SHEMWELL, CLERK
BY ______ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DEBRA GAUTHIER | CIVIL ACTION NO.: 04-2165 |
| VERSUS | JUDGE LITTLE |
| COMM. OF SOCIAL SECURITY | MAGISTRATE JUDGE KIRK |

REPORT AND RECOMMENDATION

This case comes before the Court for a review of the final decision of the Commissioner of Social Security ("Commissioner"), denying Debra Gauthier ("Gauthier"), Supplemental Security Income ("SSI") benefits under the Social Security Act ("SSA"). The issue to be decided is whether substantial evidence in the record supports the finding of the Administrative Law Judge ("ALJ") that Gauthier is not disabled and thus not entitled to supplemental security income benefits.

Gauthier was born in 1957 (Tr. 23), has a high school equivalency diploma (Tr. 26), and has past work experience as a housekeeper (Tr. 17, 25). She protectively filed an application for SSI on June 6, 2001, alleging disability as of that date due to carpal tunnel syndrome, tendinitis, and diverticulitis. (Tr. 113.) Gauthier's claim was denied initially, and a request for hearing was timely made. A hearing was held on November 4, 2002 (Tr. 20-66), at which Gauthier, who was represented by counsel, appeared and testified. Also testifying at the hearing was Charles Smith, a vocational expert ("VE"). The ALJ issued a decision unfavorable to the claimant on January 24, 2003, and Gauthier filed a request for review with the Appeals Council. The Appeals Council denied review, and the decision of the ALJ became the final decision of the Commissioner.

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other

financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. A claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th

Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Issues

Gauthier raises the following issues for review:

(1) Whether the ALJ erred at Step 3 of the evaluation process;

(2) Whether the ALJ's residual functional capacity assessment at Step 4 was unsupported by the evidence, resulting in an erroneous reliance upon the VE's testimony to find Gauthier not disabled at Step 5.

## Factual Background

Gauthier was born in 1957 and received a high school equivalency diploma. (Tr. 23, 26.) She has worked as a housekeeper, and was working as a housekeeper twice a week at the time of her application and at the time of the administrative hearing. (Tr. 25, 128.)

Gauthier treated at the Huey P. Long Medical Center from June 2000 through October 2001. (Tr. 168-178.) In June 2000, Gauthier was treated for chronic diarrhea. (Tr. 178.) She returned later that year, in October, for a colonoscopy with biopsy. (Tr. 175-177.) She was diagnosed with Irritable Bowel Syndrome ("IBS"). (Tr. 175.) In November she returned to the clinic, and the doctor suggested that Gauthier take Fibercon/Metamucil as needed and eat small, frequent meals. (Tr. 173.)

On April 3, 2001, Gauthier reported to Huey P. Long Medical Center with a swollen right ankle. An x-ray was performed, revealing no evidence of fracture. There was a large inferior

calcaneal spur and a large osteophyte at the insertion of the Achilles tendon. (Tr. 172.) On May 1, 2001, an MRI of the right ankle was performed due to complaints of right ankle pain. The test revealed tendinitis about the right ankle. (Tr. 171.) On June 14, 2001, a chest x-ray was performed, and the results were normal. (Tr. 170.)

Gauthier reported to the outpatient clinic at Huey P. Long again on June 21, 2001, for a follow up appointment. (Tr. 169.) She reported that her IBS was better, but that she was feeling depressed. The doctor recommended that Gauthier diet and exercise and continue taking Metamucil as needed. Gauthier was provided with samples of Paxil to treat her depressed mood. (Tr. 169.) She returned to the clinic in July 2001 for a follow up appointment for posterior tibial tendinitis. (Tr. 168.) Some swelling of the right ankle was noted, and Gauthier was unable to toe raise on the right. (Tr. 168.) The doctor prescribed Celebrex, as well as two months of physical therapy with surgery as an alternative if therapy failed.

On September 24, 2001, Dr. Robert Po performed an orthopaedic examination of Gauthier's right hip and ankle. (Tr. 179-182.) Gauthier reported pain with her right ankle, as well as her hands, more on the right, with numbness and tingling. (Tr. 179.) Gauthier reported that she had carpal tunnel syndrome and diverticulitis[1]. (Tr. 179-80.) She smoked a pack of cigarettes a day. She reported that, on a scale of 1-10, her pain was a 10. On physical examination, Gauthier had some limited range of motion in her neck, and full range of motion of her shoulders, elbows, wrists,

---

[1] Diverticulitis is the inflammation of an abnormal pouch (diverticulum) in the intestinal wall. Generally treated with antibiotics. Usually, this is a mild condition that responds well to treatment. www.medlineplus.gov

fingers, and thumbs. Hypoactive reflexes were noted, and she had Tinel's on both wrists. Dr. Po noted some decreased sensation on the top of the right hand. (Tr. 180.) There was limited range of motion of the lumbar spine, and ankle reflexes were absent. (Tr. 181.) Gauthier limped on the right side and was unable to walk on tiptoes because of pain. Prominent tibial tubercules were noted on both ankles. (Tr. 181.) Dr. Po reviewed prior x-rays of Gauthier's ankle, noting no arthritis or fracture, little osteophyte formation, flattening of the longitudinal arch, a plantar spur in the heel, and a small retrocalcaneal. X-ray of the right hip revealed no fracture, dislocation, or arthritis. (Tr. 182.) Dr. Po's diagnosis was: "Talipes plano-valgus right secondary to posterior tibial tendinitis and partial rupture; diabetes type II, exogenous obesity, and chronic low back strain." (Tr. 182.) The doctor opined that Gauthier could lift 25 pounds occasionally and 10 pounds frequently, could sit for 6 hours in an 8 hour day, and walk/stand a total of 4 hours in an 8 hour day. (Tr. 182.)

A September 2001 x-ray of Gauthier's right foot revealed spurring of the calcaneus at the plantar fascial insertion and Achilles tendon insertion. (Tr. 197.) There was some mild soft tissue swelling, but no fracture. In September, Gauthier advised the doctor at Huey P. Long Medical Center that she did not want surgery to her foot. (Tr. 195.) The doctor prescribed Motrin for pain. Reports from October 2001 note that Gauthier again complained of being depressed, but stated that she could not tolerate the Paxil samples given to her several months prior. (Tr. 193.)

In February 2002, Gauthier reported that she was having some improvement with her ankle pain. (Tr. 229.) In April 2002, Gauthier underwent surgery on her right ankle, specifically, debridement of right posterior tibial tendon and imbrication of right posterior tibial tendon to right flexor digitorum longus tendon. (Tr. 215.) Gauthier had physical therapy on July 5, 2002, at which time it was noted that she was a good candidate for rehabilitation. (Tr. 207-209.) However,

Gauthier cancelled her therapy appointments for July 17 and 25, 2002. (Tr. 204-205.)

Law and Analysis

Issue No. 1: Whether the ALJ erred at Step 3 of the evaluation process

First, Gauthier argues that the ALJ erred in finding that she failed to meet or medically equal an impairment listed at 20 C.F.R. § 404, Subpart P, Appendix 1. First, Gauthier argues that the ALJ erred in discrediting her complaints of depression. (Doc. #8, p.3.) It is unclear from the record exactly when or if Gauthier was ever actually diagnosed with depression. Gauthier was provided samples of Paxil to treat her depressed mood in June 2001. (Tr. 169.) Title 42 U.S.C. §423(d)(1)(A) defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. §423(d)(1)(A). In Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986), the claimant's medical history reflected years of visits to hospitals and numerous diagnoses of mental problems. Id. at 822. Moreover, the doctors who saw Singletary all determined that his mental problems involved long-term difficulties.

Gauthier's records do not indicate any ongoing medical or psychological treatment for depression and/or anxiety other than as discussed above. The record reflects that Gauthier did not take the Paxil that was prescribed. She stated that it upset her stomach. There is no evidence in the record that Gauthier ever sought treatment from a psychiatrist or social worker for her alleged depression. There is also no medical evidence to indicate that the her work activities were more than minimally effected for a period lasting at least twelve months due to Gauthier's alleged depression. Gauthier did not claim that she was disabled due to depression and pointed to no evidence indicating

that her alleged depression affected her ability to work. See Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989) (isolated comments are insufficient to establish severe impairment). Gauthier claims that, at the time of the hearing she was taking Amitriptyline to treat her depression. A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling. See Lovelace v. Bowen, 813 F.2d 55 (5th Cir. 1987); Taylor v. Bowen, 782 F.2d 1294 (5th Cir. 1986).

Gauthier points out that Dr. Po opined that she suffered from exogenous obesity, as she was 5'5" tall and weighed 208 pounds. (Tr. 180.) Her medical records also indicate that she was repeatedly instructed to go on a diet and to exercise. Gauthier argues that her obesity, in combination with her ankle problem, significantly limited her ability to do basic work activities. Dr. Po provided a diagnosis of obesity, but still determined that Gauthier could lift 25 pounds occasionally and 10 pounds frequently, could sit for 6 hours in an 8 hour day, and walk/stand a total of 4 hours in an 8 hour day. (Tr. 182.) A mere diagnosis of a condition, such as obesity, without resulting significant functional restrictions, is not disabling within the Act. Hames v. Heckler 707 F.2d 162 (5th Cir. 1983). The record supports the ALJ's determination that Gauthier was not impaired by her obesity.

Next, Gauthier argues that the ALJ should have considered her IBS as a severe impairment, as it caused her to suffer from stomach pain and chronic diarrhea. The ALJ did consider Gauthier's IBS, but determined that since early 2001, Gauthier sought no further treatment for that condition. Gauthier's doctors only recommended Metamucil for treatment. The ALJ noted that a medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling. See Lovelace v. Bowen, 813 F.2d 55 (5th Cir. 1987); Taylor v. Bowen, 782 F.2d 1294 (5th Cir. 1986).

Here, the record supports the ALJ's determination that Gauthier's obesity, IBS, and depression did not affect her basic work activities for at least twelve months. The ALJ also determined that Gauthier's allegations regarding diabetes, hip problems, arthritis, and "nerve problems" were not medically determinable impairments or severe impairments, based on a review of the medical evidence. The ALJ must apply the standard for identifying a non-severe impairment *unless* the record supports a finding that the claimant had no impairment at all. See Domingue v. Barnhart, 388 F.3d 462 (5th Cir. 2004) (finding that "[t]he ALJ did not misapply the standard for identifying a nonsevere impairment because the ALJ concluded that the alleged depression was no impairment at all.")[2]. Here, the ALJ found, based on a review of the medical evidence, that a number of Gauthier's alleged impairments were simply not impairments at all. The record supports the ALJ's determination.

Issue No. 2: Whether the ALJ's residual functional capacity assessment at Step 4 was unsupported by the evidence, resulting in an erroneous reliance upon the VE's testimony to find Gauthier not disabled at Step 5

Next, Gauthier claims that the ALJ erred in determining that she had the residual functional capacity (RFC) to perform light work, rather than sedentary work. Here, the ALJ found that Gauthier could perform light work, subject to a number of restrictions: inability to stand for more than ten minutes at a time, or more than a total of 4 hours in an 8-hour day; the inability to understand, remember, or carry out complex or detailed instructions; and the inability to perform extreme ranges of motion with either wrist. (Tr. 17-18.)

To be able to perform a full range of light work, the claimant should be able to walk/stand

---

[2]Unpublished opinion.

for a total of 6 hours in an 8-hour day. Here, the ALJ determined that Gauthier could perform a *limited* range of light work based on her specific limitations. The ALJ found that the plaintiff could perform more than sedentary work, as she could walk for more than 2 hours in an 8-hour day, but could not perform the full range of light work because she could stand/walk for only 4 of 8 hours. The ALJ's finding is consistent with Dr. Po's evaluation that Gauthier could lift 25 pounds occasionally and 10 pounds frequently, could sit for 6 hours in an 8 hour day, and walk/stand a total of *4 hours* in an 8 hour day. (Tr. 182.)

In response to the Commissioner's finding that Gauthier had performed *some* gainful work activity continuously for a number of years, including during the pendency of her claim, Gauthier argues that she would not be able to maintain a job. She points out that she only kept two housekeeping jobs, and that her daughter did the heavier cleaning because of Gauthier's problems with her ankle and wrists. Thus, Gauthier argues that the work that she performed was minor and not evidence that she could perform work activity on a regular and continuing basis for eight hours a day. The ALJ did not determine that Gauthier could perform *housekeeping work* on sustained basis. Rather, he found that Gauthier could not perform her past relevant work, but could perform other work existing in the national economy based on her limited RFC.

Gauthier also complains that the ALJ downplayed her carpal tunnel syndrome, stating that Gauthier had not been tested for that ailment and received very little treatment for those complaints. In October 2001, a doctor noted as an impression, without explanation, "CTS - R>L." (Tr. 193.) Carpal tunnel syndrome was mentioned again in treatment notes from February 2002. (Tr. 228.) However, no course of treatment was prescribed. The claimant has the burden of proof in establishing that she suffers from a disabling condition. There is little evidence in the record

regarding Gauthier's carpal tunnel syndrome, and Gauthier's attorney stated at the hearing that he did not think DDS asked for records far back enough to a time when Gauthier was possibly diagnosed with carpal tunnel syndrome. (Tr. 60.) However, Gauthier or her attorney could have produced any additional medical evidence desired. While Dr. Po noted that Gauthier had some symptoms consistent with carpal tunnel syndrome, he found no limitations based on that illness. Still, giving Gauthier the benefit of the doubt, the ALJ determined in his RFC that Gauthier had the inability to perform extreme ranges of motion with either wrist. The ALJ's RFC finding is supported by Dr. Po's opinion and the other evidence of record.

The vocational expert testified, and the ALJ concluded that based on her RFC, Gauthier could perform the jobs of check cashier (DOT 211.462-026, sedentary), receptionist (DOT 237.367-038, sedentary), and order clerk (DOT 209.567-014, sedentary). (Tr. 50-51.) These jobs require frequent, but not repetitive, fine manipulation. Gauthier argues that the job of check cashier has a specific vocational preparation (SVP) level of 3 and receptionist has an SVP level of 4, making both semi-skilled positions.[3] Gauthier's past relevant work was unskilled. Gauthier and her attorney had the opportunity to correct any purported deficiencies in the ALJ's questions to the VE. See Bowling v. Shalala, 36 F.3d 431, 435-6 (5th Cir. 1994). However, neither Gauthier nor her attorney questioned the VE regarding the SVP of Gauthier's past employment as a housekeeper or what, if any, transferable skills she possessed.

---

[3] The Department of Labor's *Dictionary of Occupational Titles* defines SVP as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." The time needed is ranked on a scale from 1 to 9, with 9 representing the most time needed to learn a job. A level 3 requires 1 to 3 months to learn a job, and level 4 requires 1 to 6 months to learn a job. www.oalj.dol.gov/public/dot/refrnc/dotappc.htm

Even if the jobs of receptionist and check cashier were beyond Gauthier's level of skill, there is certainly substantial evidence in the record that she could perform the job of order clerk, which is unskilled, and includes taking food and beverage orders over telephone or intercom system and recording order on ticket. http://www.oalj.dol.gov/public/dot/REFRNC/DOT02A.HTM. The VE testified that there were 11,000 such jobs in the State of Louisiana and one million jobs nationwide. (Tr. 50.) The hypothetical questions posed to the VE reasonably incorporated all disabilities recognized by the ALJ, and Gauthier's representative had an opportunity to correct any perceived deficiencies.

I find that there is substantial evidence in the record to support the Commissioner's decision that Gauthier could perform jobs that exist in the national economy, and that the Commissioner's decision is consistent with relevant legal standards.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Gauthier's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 2nd day of August, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE